UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS EUGENE COCKERHAM,<br><br>Defendant. | 4:16-CR-40122-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Dennis Eugene Cockerham, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 83. Plaintiff, the United States of America, opposes the motion. Docket 95. For the following reasons, the court denies defendant's motion for compassionate release.

**BACKGROUND**

On February 21, 2018, Cockerham pleaded guilty to one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Docket 58; Docket 63. On May 21, 2018, the court sentenced Cockerham to 55 months in custody on both counts, followed by 3 years of supervised release on each count, with all counts running concurrently. Docket 75; Docket 76 at 2-3. Cockerham is eligible for home confinement on September 3, 2021, and his current anticipated release date is February 16, 2022. Docket 86 at 209.

Cockerham is incarcerated at Federal Prison Camp (FPC) Yankton in Yankton, South Dakota. Docket 83 at 2. As of December 16, 2020, there are

currently 19 active COVID-19 cases among FPC Yankton's inmates and staff, 0 deaths from COVID-19, and 3 inmates and staff have recovered from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020).

Cockerham is 48 years old. Docket 86 at 209. His chronic medical conditions include obesity and a history of kidney problems. Docket 83 at 1; Docket 92 at 7-10. As of September 25, 2020, Cockerham weighed 206 pounds and is 67.5 inches tall. Docket 88 at 178-7. Based on his weight and height, his body mass index (BMI) is a 31.8. Docket 83 at 1; *See also* Adult BMI Calculator, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi _calculator.html (last visited Dec. 11, 2020).

On September 16, 2020, Cockerham wrote a letter to the warden. Docket 83-1 at 1; Docket 92-1 at 1. Cockerham requested that he be considered for compassionate release due to COVID-19. *Id.* His request was received by the warden on September 17, 2020. Docket 92-1 at 1. On September 23, 2020, the warden denied his request. *Id.* at 2-3.

Cockerham filed a pro se motion with the court for relief under the First Step Act. Docket 83. Cockerham's counsel subsequently filed a supplement to his pro se motion. Docket 92.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.

§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm'n. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Cockerham argues that the risks posed by the COVID-19 pandemic together with his adverse health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 92 at 3-4, 11-12. Cockerham requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.* at 12-15.

I.   **Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a

3

compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Cockerham first submitted a request for compassionate release on September 16, 2020. The warden received his request on September 17, 2020. The 30-day period expired on October 17, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Cockerham's motion is ripe for review on the merits.

## II.     **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of

time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the

5

discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Cockerham has failed to show that his medical conditions rise to extraordinary and compelling circumstances.

Cockerham contends that his circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 92 at 3-4, 11-12. Cockerham argues that his health conditions—obesity and his history of kidney issues—put him at high-risk of severe illness if he contracts COVID-19. Docket 83 at 1; Docket 92 at 7-10.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an

6

increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), smoking, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Dec. 1, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, liver disease (chronic liver disease, such as alcohol-related liver disease, nonalcoholic fatty liver disease, and especially cirrhosis), overweight, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Cockerham's medical conditions include obesity, alcohol use disorder, and opioid use disorder. Docket 86 at 187. The CDC recognizes that people with any stage of chronic kidney disease have an increased risk of severe illness from COVID-19. Cockerham alleges that he has a history of kidney problems. Cockerham's BOP medical records do not list his kidney condition as a current health problem. *See* Docket 86 at 187. But it does appear that he does have a history of kidney problems. Docket 88 at 116, 154. His medical providers are monitoring his condition and conducting labs to determine his kidney function. Docket 86 at 106, 157; Docket 88 at 69, 103, 139, 144, 154, 193, 197.

The CDC has identified that people who are obese (a BMI of 30 or

7

higher) are at an increased risk of severe illness from COVID-19. With a BMI of 31.8, Cockerham is obese. But "the fact that [Cockerham] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons). In addition, Cockerham has demonstrated the ability to lose weight within the facility. Just last year, he lost 40 pounds with daily exercise. Docket 86 at 121.

Cockerham's other medical conditions—alcohol and opioid use disorder—are not listed as medical conditions that might increase or increase the risk of severe illness from COVID-19. Cockerham has not identified how his medical conditions prevent him from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

The court believes that Cockerham's medical conditions are appropriately managed at FPC Yankton, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat

any inmate who does contract COVID-19. Although the court in no way underestimates Cockerham's health conditions, such ailments, coupled with the present conditions at FPC Yankton, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming Cockerham's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Cockerham pleaded guilty to one count of possession of a firearm by a prohibited person and one count of possession of a stolen firearm. Docket 58; Docket 63. Cockerham was a suspected member of the motorcycle gang "Deadmen OMG." Docket 68 ¶¶ 9, 11. During a traffic stop, two rounds of .22 caliber magnum ammunition and one round of .22 caliber long rifle ammunition were found in his vehicle. *Id.* ¶ 10. An additional .380 caliber pistol was found under his driver's seat during a separate traffic stop. *Id.* ¶ 15. His home was subsequently searched, and a .22 caliber revolver was located. *Id.* It was later determined that Cockerham had been involved in other gun trafficking crimes. *Id.* ¶ 21. His offense level was a 23 and he was in criminal history category IV. *Id.* ¶¶ 28-31, 39, 66. The guideline range for his sentence was 70-87 months in custody. *Id.* ¶ 104. The court sentenced him below his guideline range to 55 months in custody. Docket 76 at 2. Cockerham has served approximately 56.2% of his full term and 65.9% of his statutory term. Docket 86 at 210. Therefore, the court finds that Cockerham's sentence of 55 months in custody with 3 years of supervised release continues to be

9

appropriate for the seriousness of the crimes to which he pleaded guilty.

## CONCLUSION

Cockerham has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 83) is denied.

Dated December 16, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE